# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02104-DME-NYW

MIKE MARICONDA, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

FARMLAND PARTNERS INC.,
PAUL A. PITTMAN, and
LUCA FABBRI,

    Defendants.

## ORDER ON APPOINTMENT OF LEAD PLAINTIFF AND COUNSEL

Magistrate Judge Nina Y. Wang.

This matter comes before the court on two related motions: (1) The Turner Insurance Agency, Inc. and Cecilia Turner's (collectively, the "Turner Family") Motion for Appointment as Lead Plaintiff and for Approval of Counsel ("the Turner Motion") [#30, filed November 15, 2018];[1] and (2) Albert G. Driver Jr., Annette Driver Forry, and Douglas Barber's (collectively "the Farmland Investor Group") Motion of the Farmland Investor Group to Consolidate Cases, and for Appointment Of Lead Plaintiff and Lead and Liaisson [sic] Counsel ("the Farmland Investor Group Motion") [#33, filed November 27, 2018][2].

The undersigned Magistrate Judge considers the motions pursuant to 28 U.S.C. § 636(b), the Order of Reference dated November 14, 2018 [#29], and the Memoranda dated November 16

---

[1] Originally filed at [#13] on 09/10/2018 in *Kachmar v. Farmland Partners et al.*, 18-cv-01771-CMA-KLM which has since been voluntarily dismissed.

[2] Originally filed at [#15] on 09/10/2018 in *Kachmar v. Farmland Partners et al.*, 18-cv-01771-CMA-KLM.

[#31] and November 27 [#36]. This court concludes that oral argument would not materially assist in the resolution of these matters. Upon careful review of the motions and associated briefing, the applicable case law, and the entire case file, this court **GRANTS** the Turner Family Motion in part, appointing the Turner Family as Lead Plaintiff and their counsel, Bernstein Liebhard LLP, as Lead Counsel with Berens Law LLC serving as Liaison Counsel. The Turner Motion is **DENIED AS MOOT** to the extent it seeks consolidation with the now-dismissed *Kachmar* Action, and the Farmland Investor Group Motion is **DENIED**.[3]

## BACKGROUND

This is a class action alleging violations of Sections 10(b) and 20(a) the 1934 Securities Exchange Act and Rule 10b-5, codified at 17 C.F.R. § 240.10b-5, brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"), codified at 15 U.S.C. § 78u-4. *See* [#1]. The present case, styled *Mariconda v. Farmland Partners Inc. et al.*, 18-cv-2104-DME-NYW, was filed on August 17, 2018, shortly after a related case, *Kachmar v. Farmland Partners et al.*, 18-cv-01771-CMA-KLM ("the *Kachmar* Action"), was filed on July 11, 2018. Following the November 13,

---

[3] There appears to be some ambiguity whether a motion to appoint Lead Plaintiff and Lead Counsel in a class action is dispositive or non-dispositive. *See Assad v. DigitalGlobe, Inc.*, No. 17-CV-01097-PAB-NYW, 2017 WL 3575229, at *1 (D. Colo. Aug. 17, 2017); *Roofers' Pension Fund v. Papa*, No. CV 16-2805, 2017 WL 1536222, at *3 (D.N.J. Apr. 27, 2017); *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.,* No. CIV.A. 11-6247 JBS, 2012 WL 3638629, at *7 (D.N.J. Aug. 22, 2012). This court found no authority from either the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") or the District of Colorado that resolves the issue. This court is persuaded that the appointment of Lead Plaintiff and Lead Counsel is not dispositive of any claim or defense in this action, and thus proceeds by order. In either case, any party who disagrees with this Order retains the right to object to it, and the presiding judge, the Honorable David M. Ebel, will apply the appropriate standard in reviewing it whether it is considered dispositive or non-dispositive.

2018 voluntary dismissal of the *Kachmar* Action, this action proceeds as a stand-alone case and the parties seeking appointment as Lead Plaintiff have refiled their motions in this court.[4]

This action alleges that the Defendants, Farmland Partners Inc. ("Farmland Partners"), Paul A. Pittman ("Mr. Pittman"), and Luca Fabbri ("Mr. Fabbri"), made materially false and misleading statements regarding the extent and nature of Farmland Partners's related party transactions in making quarterly and yearly filings with the Securities and Exchange Commission. [#1 at ¶¶ 14–28]. The first alleged violation occurred with Farmland Partner's 2015 10-K, filed during aftermarket hours on March 15, 2016, and continued until July 11, 2018 when analyst *Rota Fortunae* published an exposé alleging that Mr. Pittman and Farmland Partners were systematically inflating Farmland Partners's revenue by "making loans to related-party tenants who roundtrip the cash back to [Farmland Partners] as rent and interest revenue." [*Id.* at ¶¶ 14–15, 26]. This caused a precipitous drop in the stock price. [*Id.* at ¶ 27]. This action and the *Kachmar* Action followed shortly thereafter.

## LEGAL STANDARD

The PSLRA sets forth "a procedure that governs the appointment of Lead Plaintiffs in 'each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.'" *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 657 (D. Colo. 2000) (quoting 15 U.S.C. § 78u-4(a)(1)). Any member of the purported class may move the court to serve as Lead Plaintiff, but must do so within sixty (60) days of the published notice of the potential class action. 15 U.S.C. § 78u-4(3)(A)(i)(II). The court must then

---

[4] The refiled motions, apparently unaltered since their original filing in the *Kachmar* action, seek consolidation of the *Kachmar* and *Mariconda* actions. Such a request for relief is now moot, and thus both the Turner Family Motion and the Farmland Investor Group Motion are denied as moot to the extent they seek consolidation of the two cases.

3

appoint Lead Plaintiff no later than ninety (90) days after the date the notice is published, or as soon as practicable after the court has ruled on a motion to consolidate related actions. *Id.* § 78u-4(3)(B)(i)–(ii).

In assigning a Lead Plaintiff, the PSLRA establishes "a rebuttable presumption that the 'most adequate plaintiff' is a person or group of persons that (1) either filed the complaint or made a motion in response to a notice, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23." *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546-RM-MEH, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)). "As for the requirement that the Lead Plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a)—typicality and adequacy—impact the analysis of the Lead Plaintiff issue." *Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 627–28 (D. Colo. 2011). The PSLRA also provides that the Lead Plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(3)(B)(v). Accordingly, it is within the court's discretion to approve appropriate Lead Counsel. *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-MD-02063JLKKMT, 2009 WL 4016635, at *2–3 (D. Colo. Nov. 18, 2009).

## ANALYSIS

### I. Appointment of the Lead Plaintiff

The court begins by examining which party satisfies the three requirements in § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc) and is entitled to presumptive Lead Plaintiff status. Those requirements are: (1) filing timely a motion for such appointment, (2) having the largest financial interest in the relief sought, and (3) otherwise satisfying the two relevant prongs of Rule 23. The court then considers whether the opposing party has adequately rebutted that presumption. The court finds

that the Turner Family is entitled to presumption of Lead Plaintiff status and that the Farmland Investor Group has not adequately rebutted that presumption. Accordingly, the Turner Family is appointed Lead Plaintiff.

*Early Notice.* The PSLRA requires that within twenty days of filing a complaint, the plaintiff(s) must circulate a notice advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period; and that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as Lead Plaintiff of the purported class." § 78u-4(a)(3)(A)(i). This early notice must be published in "a widely circulated national business-oriented publication or wire service." *Id.* The PSLRA also provides that when, as here, there are multiple actions filed asserting the same or substantially the same claims, then "only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with [the preceding] clause." § 78u-4(a)(3)(A)(ii). The *Kachmar* Action was filed on July 11, 2018, and therefore the *Kachmar* plaintiff had until July 31 to circulate an Early Notice. Pomerantz LLP, Mr. Kachmar's counsel, published an Early Notice [#30-1 at 21] on July 11, 2018 in the Globe Newswire, "a widely circulated national business-oriented wire service." *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2009 WL 1663953, at *3 (D. Colo. June 15, 2009). Mr. Mariconda filed this action approximately a month later, and moved to consolidate this action with the *Kachmar* Action. No separate Early Notice was published or required in light of the *Kachmar* Action. 15 U.S.C. § 78u-4(a)(3)(A)(ii).

The court agrees that the *Globe Newswire* is an adequate "widely circulated national business-oriented publication or wire service" under the PSLRA early notice provision. Additionally, upon review of the Notice, the court finds that it meets the requirements of

§ 78u-4(a)(3)(A)(i). Therefore, potential Lead Plaintiffs had sixty days from July 11, until September 10, to file their Motions for Appointment. Both the Turner Motion and the Farmland Investor Motion were filed on September 10, within the sixty-day limit triggered by the Early Notice. Thus, both Motions are properly before the court and both parties have satisfied the initial requirement of filing a timely motion for appointment under § 78u-4(a)(3)(B)(iii)(I)(aa).

*Largest Financial Interest.* Neither the Turner Family nor Farmland Investor Group dispute the generally accepted proposition that a group of persons may aggregate their losses in calculating a plaintiff's financial interest in the litigation, subject to certain practical limitations not implicated here. *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000); *see also id.* (analyzing caselaw rejecting aggregation among too large or too legally dissimilar groups). The court accepts both parties' aggregate loss amount as properly aggregated among the various individuals.

The Turner Family claims that it suffered a loss of $104,253.30 in connection with the Defendants' alleged violations. [#30-1 at 9, 24–29]. Specifically, Cecilia Turner alleges that she bought 1000 shares of Farmland Partners on February 2, 2017 for $11.20/share and sold those shares on July 20, 2018 for $6.5067/share for a loss of $4,693.30. [*Id.* at 25–26]. Kurt F. Turner, on behalf of the Turner Agency, Inc., purchased 20,000 shares in four installments on February 10, 13, 14, 2017 and March 8, 2017 for $11.30, $11.42, $11.32, and $10.83 per share respectively. [*Id.* at 26–27]. All 20,000 shares were sold on July 12, 2018 for $6.11/share, for a loss of $99,560 and, with Ms. Turner's loss, a claimed financial interest of $104,253.30. [*Id.* at 27, 29].

The Farmland Investor Group claims a financial interest of $88,514.88. [#33 at 7]. Albert G. Driver, Jr. purchased 15,000 shares in six installments between November 10, 2016 and January 30, 2017 for prices between $10.20/share and $11.31/share. [#33-3 at 5]. The provided

spreadsheet does not indicate any sale of Mr. Driver's shares, so it does not appear he has realized any loss at this juncture. *See* [*id.*]. Annette Driver Forry bought 450 shares on December 5, 2016 for $11/share and sold those shares on August 8, 2018 for $6.77/share. [*Id.* at 7]. This constitutes a loss of $1,903.50. Douglas Barber bought 5,673.7589 shares in numerous installments between March 22, 2016 and April 16, 2018. [*Id.* at 9–10]. Like Mr. Driver, Mr. Barber has attached a schedule of stock purchases, but has not included any sales dates or information on realized losses. [*Id.*]. Both Mr. Driver and Mr. Barber calculate their financial interest using a "lookback price" of $6.65, the ninety-day average trading value calculated under § 78u-4(e)(1), the PSLRA provision on damages limitation.

The PSLRA does not specify a method for calculating the largest financial interest when considering appointment of a Lead Plaintiff. *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015). While there is precedent in this court endorsing the "retention value" formula, *Ribozyme Pharm.*, 192 F.R.D. 656, that case appears to be an outlier. *See In re Williams Sec. Litig.*, No. 02-CV-72-H(M), 2002 WL 32153476, at *5 (N.D. Okla. July 8, 2002). Rather, there appears to be a clear weight of authority favoring the four-factor *Lax* test applied in *Lax v. First Merchants Acceptance Corp.*, Nos. 97-Civ.-2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), which considers: 1) the total number of shares purchased during the class period; 2) the number of net shares purchased during the class period; 3) the total net funds expended during the class period; and 4) the approximate losses suffered. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004); 7 Newberg on Class Actions § 22:42 (5th ed.) (referring to "most courts" applying *Lax*). When applying this test, courts typically use the "last in, first out" ("LIFO") or "first in, first out" ("FIFO") method to

calculate losses on the sale of securities, although the former is greatly preferred. S*ee, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (LIFO); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 303 (S.D. Ohio 2005) (begrudgingly applying FIFO because the parties did not supply sufficient information for a FIFO analysis). Courts in this District and elsewhere have rejected use of the ninety-day average share price damages limitation in § 78u-4(e)(1). *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.5 (S.D.N.Y. 2008); *Ribozyme Pharm.*, 192 F.R.D. at 661–62.

In this case it appears that the Turner Family used a simple LIFO/FIFO computation of damages (because all the stock was sold at once, there is no distinction between the two methods), representing their realized loss on the sale of the Farmland Partners stock as their financial interest. The court finds this is an appropriate and reasonable measure of financial interest and accepts the Turner Family's claimed financial interest of $104,253.30.

The Farmland Investor Group has sold almost none of its stock—only 450 shares, leaving just over 20,673 shares unsold. [#30-3 at 12]. Rather than setting forth their realized losses, the Farmland Investor Group relies on § 78u-4(e)(1) and claims that the Turner Family calculations should be made pursuant to the same formula. [#34 at 5 & n.3]. The court rejects Farmland Investor Group's reliance on § 78u-4(e)(1).

That section provides in full:

> Except as provided in paragraph (2), in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

8

15 U.S.C. § 78u-4(e)(1).

Courts have rejected reliance on this formula because the requirements for appointment of Lead Counsel refer to a party's financial interest, not its speculative damages award. *Varghese*, 589 F. Supp. 2d at 396 n.5 ("§ 78u–4(e)(1) addresses the PSLRA's limitation on damages, not the methodology for determining a proposed Lead Plaintiff's financial interest in the relief sought."); *Ribozyme Pharm.*, 192 F.R.D. at 661–62 ("'[D]amages' under the PSLRA is not the proper test to determine [the] largest financial interest."). There is authority outside this District which supports the use of this section, *In re Gen. Elec. Sec. Litig.*, No. 09 CIV. 1951DC, 2009 WL 2259502, at *1 (S.D.N.Y. July 29, 2009), but even if the court was inclined to look past *Ribozyme Pharmaceuticals*'s clear rejection of that standard, it would still find that section inapposite because the ninety-day period begins on "the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." § 78u–4(e)(1). But here, there does not appear to have been any such corrective statement. The source of the Farmland Investor Group's proposed financial interest is therefore not clear. The court also notes that while the Farmland Investor Group used the § 78u-4(e)(1) formula for its unsold securities, the Group used a simple LIFO/FIFO analysis for the realized losses in the 450 shares it did sell, and thus has at least implicitly conceded that the Turner Family's similar calculations based on their realized losses are proper.

The court need not resolve the proper measure of the Farmland Investor Group's financial interest because it is not disputed that the Turner Family has the largest financial interest—even applying the § 78u-4(e)(1) formula, the Farmland Investor Group concedes as much. [#34 at 8].

The court therefore finds that the Turner Family has the largest financial interest in this case pursuant to § 78u-4(a)(3)(B)(iii)(I)(bb). Having determined that the Turner Family has the

largest financial interest claimed, the court then focuses its attention on the Turner Family to determine whether they meet Rule 23's requirements. *Delashmet v. Custom Designed Compressor Sys., Inc.*, No. CIV 05-0848 MCA/WPL, 2006 WL 2016080, at *3 (D.N.M. Mar. 9, 2006) (setting forth the procedure for weighing competing motions for appointment of lead plaintiff and counsel in a PSLRA action).

***The Requirements of Rule 23.*** Under the PSLRA, § 78u-4(a)(3)(B)(iii)(I)(cc) requires satisfaction of Rule 23 to be entitled to presumption as most adequate plaintiff. There are only two relevant parts of Rule 23: the typicality and adequacy requirements. *City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*, No. 12-CV-02164-PAB-KLM, 2013 WL 1677553, at *2 (D. Colo. Apr. 17, 2013). Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." But while § 78u-4(a)(3)(B)(iii)(I)(cc) frames Rule 23 as a prerequisite to status as a presumptive Lead Plaintiff, the procedure for challenging a Lead Plaintiff's presumptive status set forth in § 78u-4(a)(3)(B)(iii)(II)(aa), (bb) seems to reverse that process.

§ 78u-4(a)(3)(B)(iii)(II)(aa), (bb) provide that one may rebut the presumptive Lead Plaintiff's status by showing that she "will not fairly and adequately protect the interests of the class" or that she is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." "The statute thus simultaneously appears to make 'typicality' and 'adequacy' both part of the threshold identification of the presumptive Lead Plaintiff and the sole means of rebutting the Lead Plaintiff presumption." *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Courts reviewing a contested motion for appointment as Lead Plaintiff have resolved this apparent contradiction by requiring an initial preliminary or *prima facie* showing of

typicality and adequacy under § 78u-4(a)(3)(B)(iii)(I)(cc) and then permitting a rebuttal of that presumption if applicable. *See id.*; *Delashmet*, 2006 WL 206080 at *3–4; *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 446 (D. Mass. 2018); *Finocchiaro v. NQ Mobile, Inc.*, No. 15 Civ. 6385 (NRB), 2017 WL 1535382, at *1 (S.D.N.Y. Apr. 17, 2017); *Leibs v. Supreme Indus., Inc.*, No. 2:16-cv-08230-CAS(SSx), 2017 WL 457183, at *2 (C.D. Cal. Jan. 31, 2017); *Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385, at *1 (E.D. Tex. Sept. 21, 2015); *Ohio Pub. Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005).

In considering the typicality requirement under Rule 23(a)(3), courts "should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *Cedant Corp.*, 264 F.3d at 265 (quotations omitted); *see also City of Dania Beach*, 2013 WL 1677553, at *2 ("Typicality exists where the injury and the conduct are sufficiently similar." (quotations omitted)). In considering whether the adequacy requirement under Rule 23(a)(4) is met, courts consider "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) [if] counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Ribozyme Pharm.*, 192 F.R.D. at 659; *Garbowski*, 302 F. Supp. 3d at 446–47.

The Turner Family has met its *prima facie* burden of establishing both the typicality and adequacy requirements. The Turner Family and the lead Plaintiff in this case, Mr. Mariconda, are represented by the same counsel, Bernstein Liebhard LLP and Berens Law LLC. There does not appear to be any discernable difference between Mr. Mariconda's and the Turner Family's theory of the case, allegations regarding the Defendants' violations of the securities laws, or damages,

11

and the Farmland Investor Group does not claim as such. The Turner Family's claims therefore appear to be entirely typical of the class. Likewise, the court is satisfied that the Turner Family is an adequate representative; there are no apparent or claimed conflicts of interest, and the Turner Family's choice of counsel appears to be reasonable and appropriate as set forth below.

The Turner Family is thus the presumptive Lead Plaintiff. The court now turns to whether the Farmland Investor Group has adequately rebutted this presumption under § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

***Rebuttal of Presumptive Status.*** The Farmland Investor Group argues that the Turner Family is not adequate class representative because "the Turner Family did not purchase any Farmland shares during the class period alleged in the first-filed *Kachmar* complaint." [#34 at 1]. Obviously, while this contention may have had merit in its initial filing in the *Kachmar* Action, it is not dispositive given that the *Mariconda* action is the operative case.

More relevant is the Farmland Investor Group's contention that "the Turner Family did not purchase any shares of Farmland after any of the 2017-related false statements originally alleged in the Kachmar complaint and realleged in Mariconda." [*Id.* at 3]. The Farmland Investor Group maintains that this materially weakens the Turner Family's interest in the case because "[p]ost-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased." [*Id.* at 6] (quoting *Roots P'Ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992)). Because only some of the Turner Family's purchases were made after the first misstatement, the Farmland Investor Group argues that the Turner Family would face the spectre of a strong defense motion to dismiss, and their weakened position may compromise their negotiating position, potentially prejudicing other class members. [*Id.*].

The latest purchase any member of the Turner Family made was on March 8, 2017. [#30-1 at 27]. The latest any member of Farmland Investor Group purchased stock was Mr. Barber's April 16, 2018 purchase. [#33-3 at 12]. Allegations in the Complaint concern two alleged violations of Rule 10b-5 made before March 8, 2017: (1) the 10-K for the 2015 fiscal year, filed March 15, 2016 [#1 at ¶ 14], and (2) a May 10, 2016 phone call with Farmland Partners investors and analysts [*id.* at ¶ 16]. Allegations in the Complaint concern four alleged violations of Rule 10b-5 made after March 8, 2017: (1) the 10-Q for the first quarter of 2017, filed May 10, 2017 [*id.* at ¶ 17]; (2) the 10-Q for the second quarter of 2017, filed July 21, 2017 [*id.* at ¶ 19]; (3) the 10-Q for the third quarter of 2017, filed November 9, 2017 [*id.* at ¶ 21]; (4) the 10-K for the 2017 fiscal year, filed March 5, 2018 [*id.* at ¶ 23]. Turner Family purchases encompasses two of the six allegations in the Complaint while the Farmland Investor Group's purchases encompass all six.

The court is not persuaded this rebuts the Turner Family's presumptive status as Lead Plaintiff for two reasons. First, the fact that some of a putative Lead Plaintiff's claims may be subject to a defense is not sufficient evidence of their unsuitability as Lead Plaintiff—to rebut the presumption of Lead Plaintiff status, such plaintiff must be subject to a *unique* defense. Unique defenses are those defenses specific to a plaintiff, or small subset thereof, such that it would impede the party's ability to serve as an adequate class representative by "threaten[ing] to become the focus of the litigation." *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 586 (D. Colo. 2002) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)); *see also Masri v. Wakefield*, 106 F.R.D. 322, 325 (D. Colo. 1984) ("There is concern that the representation of the class will suffer as the representative becomes distracted by the presence of possible defenses applicable only to him."). Courts have routinely held that these sorts of timing issues do not constitute unique defenses within the meaning of the PSLRA because most if not all

class members will have similar issues—common sense dictates that most shareholders will have purchased their securities at least in part before all the alleged violations occurred. *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) ("Nothing in the PSLRA indicates that district courts must choose a Lead Plaintiff with standing to sue on every available cause of action. . . . Nor do we think it necessary that a different Lead Plaintiff be appointed to bring every single available claim, as such a requirement would contravene the main purpose of having a Lead Plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." (quotations and citations omitted)).

Second, as the Turner Family notes, when multiple material misrepresentations form part of a common course of fraudulent conduct, courts have not strictly applied the "post-purchase" rule identified in *Roots Partnership*. *See, e.g.*, *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 393 (E.D. Pa. 2005); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13–14 (D. Mass. 2004). The issues identified above may not even be legally determinative, although the court considers making such a determination as to whether the alleged misstatements constitutes a common course of fraud is inappropriate and unnecessary to substantively consider at this very early stage.

In sum, the court is persuaded that the Turner Family has established that it is the presumptive Lead Plaintiff and the Farmland Investor Group has not adequately rebutted that presumption. Accordingly, the Turner Family is appointed Lead Plaintiff.

## II.     Appointment of Lead Counsel

The Turner Family Motion also seeks appointment of Bernstein Liebhard LLP as Lead Counsel in this matter. [#30-1 at 11]. The PSLRA vests the Lead Plaintiff, the Turner Family,

with the authority to select and retain Lead Counsel with court approval. § 78u-4(a)(3)(B)(v). In reviewing the adequacy of the Turner Family's selection of Lead Counsel, the court considers whether the Lead Counsel is "qualified, experienced[,] and able to vigorously conduct the proposed litigation." *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at *8 (D. Colo. Oct. 23, 2012) (internal quotations and citations omitted). Considering the extensive experience and accolades claimed by Bernstein Liebhard LLP and Berens Law LLC, [*id.* at 11–12; #30-1 at 30–72], the court is satisfied that Bernstein Liebhard LLP is an adequate choice as Lead Counsel and Berens Law LLC is an adequate choice as Liaison Counsel.

## CONCLUSION

Considering the foregoing, it is **ORDERED:**

(1) The Turner Family's Motion for Appointment as Lead Plaintiff and for Approval of Counsel [#30] is **GRANTED IN PART**;

  (A) The Turner Family is **APPOINTED** as Lead Plaintiff;

  (B) Bernstein Liebhard LLP is **APPOINTED** as Lead Counsel;

  (C) Berens Law LLC is **APPOINTED** as Liaison Counsel;

(2) Turner Family's Motion for Appointment as Lead Plaintiff and for Approval of Counsel [#30] is **DENIED AS MOOT** to the extent it seeks consolidation of this action with the *Kachmar* Action;

(3) The Farmland Investor Group's Motion of the Farmland Investor Group to Consolidate Cases, and for Appointment Of Lead Plaintiff and Lead and Liaisson [sic] Counsel [#33] is **DENIED**.

Dated: December 3, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge