**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02104-DME-NYW

THE TURNER INSURANCE AGENCY, INC.,
CECILIA TURNER, and
OBELISK CAPITAL MANAGEMENT,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

FARMLAND PARTNERS INC.,
PAUL A PITTMAN, and
LUCA FABBRI,

Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT (Doc. 50)**

---

In this securities fraud class action arising from the alleged failure to disclose certain related-party transactions, the Court must decide whether plaintiffs have adequately pled (1) falsity, (2) materiality, (3) scienter, and (4) loss causation. Plaintiff-investors allege that various corporate officers of Farmland Partners, Inc. ("Farmland") materially misled the public about Farmland's financial condition in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by making materially false statements and omissions about the company's loan program, and, specifically, the fact that it was loaning money to "related parties." Plaintiffs also seek to hold two of Farmland's officers personally liable as controlling persons pursuant to section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for Farmland's section 10(b) violation. The Court DENIES Defendants' joint motion to dismiss the Complaint.

## STANDARD OF REVIEW

The facts incorporated throughout this order are taken from the well-pleaded allegations of the Complaint, which this Court must accept as true. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007). When ruling on motions to dismiss, this Court must consider the complaint in its entirety, as well as other sources courts ordinarily examine, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. at 322-23. Plaintiffs need allege only "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element [of a claim]." Sylvia v. Wisler, 875 F.3d 1307, 1326 (10th Cir. 2017).

## DISCUSSION

Plaintiffs are persons and entities who purchased or otherwise acquired the publicly traded securities of Farmland between November 12, 2015 and July 10, 2018 (the "class period"). Farmland is a Denver-based real estate investment trust that makes most of its money by acquiring land and renting it to farmers. Since August 2015, Farmland has additionally operated a "loan program," through which it issues loans to both tenant- and non-tenant-farmers. Plaintiffs filed this class-action suit against Farmland and its officers, Paul Pittman and Luca Fabbri, alleging that defendants violated section 10(b) and its counterpart Rule 10b–5, 17 C.F.R. § 240.10b–5, by making false and misleading statements and omissions about its loan program in its public financial statements.

Section 10(b) and 10b–5 "prohibit making any material misstatement or omission in connection with the purchase or sale of any security." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). To establish a violation of section 10(b), a plaintiff must plausibly allege that a defendant made statements that: (1) contained false or misleading statements of material fact, or failed to state a material fact necessary to make statements not misleading; (2) related to the purchase or sale of securities; (3) were made with scienter, that is, with the intent to defraud or recklessness; (4) led to reliance by the plaintiff; and (5) caused the plaintiff's loss (loss causation). Nakkhumpun v. Taylor, 782 F.3d 1142, 1146-47 (10th Cir. 2015). Generally Accepted Accounting Principles (GAAP), and specifically FASB Accounting Standards Codification 850-10-20 ("ASC 850"), require corporations to include disclosures of "related party transactions," including the nature of the relationship involved. GAAP defines a related party as one which "controls or can significantly influence the management or operating policies of the other to the extent that one of the transacting parties might be prevented from fully pursuing its own interest." ASC 850.

The Complaint alleges that Farmland made two materially misleading statements about its loan program. First, the Complaint alleges that Farmland stated in several financial reports that it was loaning money to "third parties" through its loan program, which was false and misleading because, in truth, Farmland was issuing loans to related parties—two farmers named Ryan Niebur and Jesse Hough—without disclosing the loans as related party transactions. Plaintiffs allege that, at the time Niebur received loans from Farmland, he was a related party because he was simultaneously serving as Farmland's Director of Acquisitions & Management. Plaintiffs allege that, at the time Hough received loans from Farmland, he was a related party because he was simultaneously serving as a consultant to Farmland and is a longtime business

partner of Pittman, Farmland's CEO, including through his role as cofounder of Farmland. Second, plaintiffs allege that Farmland stated in several financial reports that it conducted "due diligence on loan collateral the same way [it] conduct[ed] due diligence on potential farm acquisitions," Compl. ¶¶ 64, 89, 102, 120, 149, which was materially misleading because there is evidence that Farmland did not properly vet all borrowers. Finally, plaintiffs allege that they learned about the alleged materially misleading statements when an "investment analyst" named Rota Fortunae published a detailed report on the investing website "Seeking Alpha," which stated that Farmland had neglected to disclose that the loans it made to Niebur and Hough were related party transactions and that Niebur was a "now-bankrupt tenant." ¶ 16. Farmland's common stock fell 40% the same day Rota Fortunate revealed that information.

Defendants' motion to dismiss asserts that, with regard to each allegation, plaintiffs failed plausibly to allege (1) a false or misleading statement or omission, (2) materiality of the allegedly false statements and omissions, (3) scienter, and (4) loss causation. Additionally, defendants argue that, because plaintiffs have failed to state a section 10(b) claim in their Complaint, they have failed to state a section 20(a) claim, because section 20(a) requires plaintiffs to plead a primary violation of the securities laws. The Court concludes that plaintiffs have alleged sufficient facts that, when taken as true, plausibly state a claim that defendants violated section 10(b) through the alleged misleading statements and omissions. For the same reason, plaintiffs have also alleged sufficient facts to support their section 20(a) claims against Pittman and Fabbri.

## I. Section 10(b) Allegations

### A. False or Misleading Statement or Omission

Defendants first contend that plaintiffs failed to allege adequately that defendants made false or misleading statements or omissions for two different reasons. First, defendants argue that plaintiffs' allegations fail to meet the specificity requirements of Rule 9(b). Second, defendants argue that, taking all of the allegations in plaintiffs' Complaint as true, plaintiffs' allegations fail to state a claim for relief that is plausible on its face.

1. Specificity Requirements

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead falsity, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1). Here, the plaintiffs' allegations describe with adequate specificity the two misleading statements Farmland allegedly made to the public—first, its statements about loaning money to "third parties," which omitted related party disclosures, and, second, its statement about performing due diligence to screen potential borrowers equivalent to the due diligence used for potential farm acquisitions.

2. Statements and Omissions about the Niebur and Hough Loans

Whether plaintiffs have alleged facts sufficient to state a section 10(b) claim based on Farmland's statements and omissions related to its transactions with Niebur and Hough depends on whether plaintiffs have alleged facts sufficient to show that those individuals were "related parties" at the relevant times. The plaintiffs have done so. The governing standard is not in

dispute. GAAP defines a related party as one which "controls or can significantly influence the management or operating policies of the other to the extent that one of the transacting parties might be prevented from fully pursuing its own interest." ASC 850. The Complaint alleges Farmland made nine loans to farmers during the class period, five of which were made to Niebur and Hough in the following amounts:

1. $980,000 loan to Niebur personally in November 2015,
2. $2.194 million loan to Niebur personally in May 2017,
3. $100,000 loan to Hough through PHS Holdings in July 2017,
4. $669,000 loan to Hough through Hough Farms in August 2017, and
5. $5.25 million loan to Hough through Siffring Farms in January 2018.[1]

The Complaint alleges that Farmland did not characterize these loans as related party transactions in its financial statements. Rather, Farmland numerous times explained in its reports that it lends money to "third party farmers." For example, Farmland included the following two disclosures in its financial statements:

- Under the [Farmland] Loan Program, the Company makes loans to third-party farmers (both tenant and non-tenant) to provide financing for working capital requirements and operational farming activities, farming infrastructure projects, and for other farming and agricultural real estate related projects. Compl. ¶¶ 100, 107, 112, 117, 127, 131, 139, 161.

- Under the [Farmland] Loan Program, we provide loans to third-party farmers, which exposes us to risks associated with being a lender, including the risk that borrowers default on their obligations to us, which could adversely affect our results of operations and financial condition. ¶¶ 91, 122, 146.

Additionally, although Farmland listed the amounts of each of its nine loans in its financial

---

[1] The Complaint alleges that Hough was the president of Siffring Farms when it received the 2018 loan and that Hough was the signatory on the PHS Holdings loan. Hough Farms was a company part-owned by Pittman and Hough until December 31, 2015, when Pittman released his interests in the company.

reports, it did not disclose the identity of the debtors, including the names of Niebur and Hough.

Plaintiffs allege that Niebur had the ability to significantly influence the Farmland management in 2015 and 2017 when Farmland lent him money because, during both time periods, Niebur was a member of the Farmland "Management Team" as evidenced by Farmland's public presentations listing him as a farm manager or the "Director of Acquisitions & Management." ¶¶ 59-60. The Complaint also alleges that Niebur's own LinkedIn profile indicated that he was working as Farmland's Director of Acquisitions until January 2018.

As for Hough, the Complaint alleges that he was a related party at all relevant times due to his consultant position with Farmland. The plaintiffs allege that Farmland admitted in a public Internet post that Hough was a consultant to Farmland from the time of Farmland's IPO in April 2014 "through April 16, 2018." ¶ 169. Plaintiffs assert that throughout that time Hough was a "key" consultant and someone that Farmland relied on heavily for business strategy advice, which placed him in a position to influence the management and operating policies of Farmland in 2017 and 2018 when he borrowed money from the company. The Complaint's allegations are sufficient to state a plausible claim that Hough was a related party.

Because plaintiffs have adequately alleged that Niebur and Hough were related parties during the relevant times, plaintiffs have adequately alleged that defendants gave misleading information regarding the loans made to Niebur and Hough by stating that Farmland loaned money to "third party farmers" without disclosing that Niebur and Hough were related parties.

3. Statements about Due Diligence

Plaintiffs also allege sufficient facts that, if proven, plausibly state a claim that Farmland described the due diligence process for its loan program in a false or misleading way. Plaintiffs allege that defendants stated in Farmland's annual reports:

- We conduct due diligence on loan collateral the same way we conduct due diligence on potential farm acquisitions, and we screen potential borrowers the same way we screen potential tenants.

¶¶ 64, 89, 102, 120, 149. The Complaint alleges that that statement was false and misleading when made because, instead of rigorously vetting potential borrowers as Farmland stated, it was issuing loans to related parties, which "invariably have more lenient underwriting and due diligence standards than loans to 'third parties.'" ¶ 101. Furthermore, the Complaint alleges that Farmland's lax lending protocols are evidenced by the fact that "several loans in the Loan Program reflected poor borrower screening as they were either renegotiated, defaulted, wrapped into new loans, or the borrower went bankrupt (in the case of Niebur)." Id. Those facts plausibly allege that Farmland's due diligence statement was false or misleading.

**B. Materiality**

1. Materiality of Niebur and Hough Loans

Plaintiffs also sufficiently allege materiality. In order to determine whether a misleading statement or omission is material, courts must engage in a fact-specific inquiry. Basic Inc. v. Levinson, 485 U.S. 224, 240 (1988). The materiality of a statement or omission depends on whether "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." Id. at 231–32 (quotation omitted). "[B]oth quantitative and qualitative factors should be considered in assessing a statement's materiality." ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009). Several circuits have held that, because materiality is a mixed question of law and fact, in the context of a Fed. R. Civ. P. 12(b)(6) motion, "a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the

question of their importance." Id.; see also In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 275 (3d Cir. 2004) (adopting the same standard); Singer v. Reali, 883 F.3d 425, 440 (4th Cir. 2018) (same).

Reasonable minds could differ on the question of the importance of the Niebur and Hough loans to a potential investor. The Complaint alleges that the loans to Niebur and Hough cumulatively comprised $9.2 million, or 70%, of the $15.4 million in Farmland's loan program and, when the loans were made, constituted 40% of Farmland's total cash-on-hand. Considered separately, Niebur's loans comprised about 13% of Farmland's cash-on-hand and Hough's loans comprised about 27% of Farmland's cash-on-hand. Defendants counter that the Niebur and Hough loans made up less than 1% of Farmland's total assets and argue that percentage of cash-on-hand is an irrelevant metric. However, that metric may be relevant to investors because, according to defendants, tax laws governing real estate investment trusts like Farmland require those companies to distribute at least 90% of taxable income to stockholders. Thus, if Farmland had chosen not to loan $3.174 million to Niebur and $6.019 million to Hough, a large percentage of one or both of those amounts would have been distributed to the stockholders. Therefore, a stockholder may want to know how likely it is that the loan program will make the company money over time, which includes consideration of whether the loans are being made to related parties at an interest rate that is beneficial to the company and upon an appropriate level of scrutiny.

Defendants also emphasize that the Tenth Circuit has endorsed a "rule of thumb" used by accountants that "omission of an item that falls under a 5% threshold [of total revenues] is not material in the absence of particularly egregious circumstances, such as self-dealing or misappropriation by senior management." United States v. Nacchio, 519 F.3d 1140, 1162-64

(10th Cir. 2008) (stating that "a 5% numerical threshold is a sensible starting place for assessing the materiality," but nevertheless holding that a potential 4.2% shortfall in revenues was material to investors), vacated on other grounds on reh'g en banc, 555 F.3d 1234 (10th Cir. 2009). Defendants assert that the largest of the Niebur and Hough loans—a $5.25 million loan—comprised less than 0.5% of Farmland's total assets at the time it was made. And Farmland's total revenue from the loan program has represented approximately one percent or less of Farmland's operating revenues from the program's inception through 2017. However, the 5% numerical threshold "does not end the inquiry" with regard to materiality. Id. at 1162. "Special factors might make a smaller miss material." Id.

In addition to quantitative factors, courts are also required to consider relevant qualitative factors when assessing materiality. In Staff Accounting Bulletin (SAB) No. 99, the SEC has provided internal guidance regarding the determination of materiality. There, the SEC lists several qualitative factors that could render a "quantitively small misstatement" material, including, relevant here:

- whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability;
- whether the misstatement affects the registrant's compliance with regulatory requirements; and
- whether management or the independent auditor expects . . . that a known misstatement may result in a significant positive or negative market reaction.

Although the Tenth Circuit has yet to rely on SAB 99, the Second Circuit considers the bulletin persuasive authority. ECA, 553 F.3d at 198. Here, plaintiffs argue the loan program was important to Farmland's overall business because, as alleged in the complaint, the program was designed to be "synergistic and benefit [Farmland's] core business by drawing on the same

relationships." Compl. ¶ 84. However, it "largely benefitted related parties" instead of rank-and-file customers. Id. The Complaint also alleges that Farmland's omissions violated its regulatory requirements under GAAP, and that the revelation of the omissions to the public caused Farmland's common stock to drop 40%, suggesting that management may have anticipated that disclosing the information would negatively affect Farmland's stock prices. Thus, the Complaint alleges a facially plausible claim that Farmland's misleading statements and omissions about the Niebur and Hough loans were material. However, the Court cautions that, if raised in a motion for summary judgment, the outcome on materiality may be different depending on the facts that arise through discovery.

2. Materiality of Due Diligence Statement

Plaintiffs likewise plausibly allege a claim that Farmland's description of its due diligence process for the loan program was material. Plaintiffs allege that, upon information and belief, the loan program was "designed or slated to be largely utilized to benefit related parties." ¶ 84. That is a sufficient allegation of materiality at this stage of the proceeding. A reasonable shareholder would undoubtedly consider it important to know whether Farmland had created a sham loan program to help the directors' friends or created a legitimate new source of revenue.

### C. Scienter

1. Statements Regarding the Niebur and Hough Loans

Next, plaintiffs have alleged sufficient facts that when taken as true state a facially plausible claim that the defendants acted with scienter when they failed to disclose that Niebur and Hough were related parties when they received loans from Farmland. Plaintiffs must plead with particularity "facts giving rise to a strong inference" that the defendants made the identified

statement or omission with the requisite level of scienter. 15 U.S.C. § 78u–4(b)(2)(A). To determine whether plaintiffs have alleged facts sufficient to give rise to this "strong inference," a court must take into account "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs, 551 U.S. at 324. The inference that the defendant acted with scienter need not be "irrefutable" or the "most plausible of competing inferences," but it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. The Tenth Circuit has held that, in a non-disclosure suit like this one, plaintiffs must show: "(1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1200–01 (10th Cir. 2015) (quoting Weinstein v. McClendon, 757 F.3d 1110, 1113 (10th Cir. 2014)). "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." Weinstein, 757 F.3d at 1113. Thus, in this case, plaintiffs are required to allege through well-pleaded facts that defendants knew or recklessly disregarded the fact that the Niebur and Hough loans were related party transactions and knew that the non-disclosure of that fact would likely mislead reasonable investors.

As for the defendants' knowledge of Hough's related-party status, Farmland's third quarter report in November 2015 disclosed in its related-party transactions section that (1) "11% of the acres in the Company's farm portfolio was rented to and operated by" entities partly owned by both Hough and Pittman and that, at the time, (2) Hough was serving as a consultant to Farmland. Compl. ¶ 85. Read in the light most favorable to the plaintiffs, the disclosure of

Hough's consulting relationship in 2015 suggests that, at that time, the defendants believed that Hough's consultant position was one reason, in addition to Pittman's interests in Hough's companies, that any transaction with Hough's companies was a related party transaction. In March 2016, Farmland disclosed in its annual report that it was no longer treating the Pittman-Hough companies as related because Pittman had released all of his interests in those companies. ¶ 95. However, the Complaint's allegations plausibly allege that, in March 2016 and thereafter, the defendants knew that Hough's status as a consultant continued to make him a related party and the nondisclosure of that fact was likely to mislead the investors. Defendants assert that they have always been under the impression that, once Pittman released his interests in the companies co-owned by him and Hough, those companies were no longer related parties, making it lawful to characterize the loans made to them as normal transactions, not related party transactions. That is a plausible reading of the facts, but the inference that the defendant acted with scienter is "cogent and at least as compelling" as the inference of innocence. Tellabs, 551 U.S. at 324.

As for Niebur, the Complaint alleges that Niebur was a member of management throughout the class period, which made him a related party, and that, given the small size of the company, the individual defendants were aware of that. The Complaint alleges that, at its largest, Farmland had sixteen employees. Plaintiffs allege that the individual defendants "worked intimately" with Niebur and, as a result, were no doubt aware of or at least recklessly disregarded the fact that Niebur was a related party when he received loans from Farmland. Compl. ¶¶ 62, 180. Although the provability of these allegations remains to be seen, plaintiffs' scienter allegations are sufficient to survive a motion to dismiss.

Plaintiffs further allege that scienter regarding both Neibur's and Hough's status as a

related party can be inferred from the suspicious fact that five Farmland directors resigned between August 2017 and April 2018, not long after Farmland loaned Niebur $2.1 million and around the same time that Farmland loaned Hough $5.25 million. Plaintiffs also allege that the fact that Farmland switched auditors in March 2018 suggests the same. The Court agrees that all of the facts alleged, taken collectively and considered under the criteria of a motion to dismiss, can give rise to a strong inference of scienter, allowing a reasonable jury to conclude that the defendants' either knowingly or with reckless disregard omitted to disclose Niebur's and Hough's related-party status.

2. Statements Regarding Due Diligence

Plaintiffs also allege a plausible claim that defendants acted with the requisite scienter when they inaccurately described Farmland's due diligence process for the loan program as equally as robust as the due diligence it performs on asset acquisitions. Taking as true plaintiffs' allegations that the loan program was "designed or slated to be largely utilized to benefit related parties," ¶ 84, and that defendants received "information reflecting the true facts regarding the Loan Program," ¶ 178, the Court can reasonably conclude that, if proven, those facts plausibly state a claim that defendants knowingly or recklessly misrepresented the vigor of its due diligence practices in the loan program.

## D. Loss Causation

Finally, plaintiffs have sufficiently alleged loss causation. Securities fraud plaintiffs must plead loss causation, that is, the "causal connection between the material misrepresentation and the loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005). To plead loss causation under Dura, a plaintiff must allege that "corrective information was revealed and that this revelation caused the resulting decline." In re Williams Sec. Litig.—WCG Subclass, 558 F.3d

1130, 1140 (10th Cir. 2009) (quotation and citation omitted). That is what plaintiffs have alleged here. The Complaint states that

> During the Class Period, as detailed herein, [Farmland] securities were artificially inflated due to Defendants' misleading public statements. When Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of [Farmland] securities fell as the prior artificial inflation came out.

Compl. ¶ 187. Plaintiffs further allege that

> Defendants' materially false and misleading statements relate to undisclosed related transactions in the Company's Loan Program, as well as undisclosed dangers with many of the loans in the Loan Program. The Loan Program . . . was also supposed to be synergistic to Farmland's core renting business, when instead it was either utilized or designed to benefit related parties to the detriment of Farmland.

¶ 191. Finally, the Complaint indicates that Farmland's common stock fell 40% after Rota Fortunae revealed on the Seeking Alpha website Farmland's misrepresentations related to Niebur, Hough, and its due diligence program.

Defendants contend that, because Farmland's stock was being traded in an efficient market, the alleged corrective disclosure did not present any "new" facts to the market, because, in an efficient market, "all publicly available information about a security is reflected in the market price of the security." Meyer v. Greene, 710 F.3d 1189, 1197-98 (11th Cir. 2013). However, courts acknowledge that information in a corrective disclosure can be new "in a practical sense." Norfolk Cty. Retirement Sys. v. Comm. Health Sys., Inc., 877 F.3d 687, 695 (6th Cir. 2017). Plaintiffs have adequately alleged that the Rota Fortunae post revealed new information to the public. The Complaint explains that defendants "did not disclose the identity of the borrowers" to Farmland investors, but Rota Fortunae did. Compl. ¶ 3. As plaintiffs point out, public documents describing two of the Hough loans listed the loan recipients as "PHS Holdings" and "Siffring Farms," not Jesse Hough. An ordinary market observer may not have

recognized Siffring Farms and PHS Holdings as Hough's businesses. Furthermore, the report relied on deed and trust land records from Nebraska and Colorado to reveal that, together, Pittman and Hough were the co-owners, officers, and directors of Pine Ridge, a business operating in Nebraska, as recently as 2018, and that Pine Ridge was a co-borrower on a loan securing the same property that secured Farmland's $669,000 loan to Hough. These nuanced connections were not reasonably available to the public prior to the Rota Fortunae post.

For these reasons, the Complaint adequately pled loss causation in addition to the other elements of a section 10(b) claim discussed above.

**II. Section 20(a) Allegations**

The defendants' motion to dismiss challenges plaintiffs' section 20(a) claims against Pittman and Fabbri on the grounds that plaintiffs failed to show a primary violation of section 10(b). Because the Court concludes that plaintiffs have alleged a violation of section 10(b) sufficient to overcome a motion to dismiss, plaintiffs' section 20(a) claims overcome defendants' motion as well.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc. 50).

DONE AND SIGNED this 18th day of June, 2019.

BY THE COURT:

*s/ David M. Ebel*

U. S. Circuit Court Judge