**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02104-DME-NYW

DON BROKOP, Individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

FARMLAND PARTNERS INC.,
PAUL A. PITTMAN, and
LUCA FABBRI,

        Defendants.

---

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER**
**JURISDICTION UNDER RULES 12(b)(1), 12(h)(3) AND 12(c)**

---

ny-2189634

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................ 2

ARGUMENT ...................................................................................................... 7

I.      BECAUSE MR. BROKOP LACKS ARTICLE III STANDING TO SUE IN HIS OWN NAME, THE COURT MUST DISMISS THE COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION ................................................... 7

      A.     The Court Must Address Mr. Brokop's Standing Before Addressing His Class Certification Motion. ........................................................................ 7

      B.     Mr. Brokop Lacks Standing. ................................................................. 8

             1.     Because Mr. Brokop Sued in His Own Name, He Lacks Standing to Bring Claims Belonging to the Trust. ................................... 8

             2.     Even if Mr. Brokop Had Purported To Sue as a Trustee—and He Did Not—He Lacks Standing to Act on the Trust's Behalf Without His Co-Trustee's Consent. ............................................. 10

      C.     The Court Cannot Amend the Caption to Cure Mr. Brokop's Lack of Standing. ...................................................................................... 13

II.     THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT LEAVE TO AMEND. ............................................................................................... 14

CONCLUSION ................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006)................................................................................7

*Baldwin Park Free Speech Coal. v. City of Baldwin Park*,
    2020 WL 5549138 (C.D. Cal. Sept. 15, 2020) ...............................9, 10

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) ..............................................................14

*Cunningham v. BHP Petroleum Great Britain PLC*,
    427 F.3d 1238 (10th Cir. 2005) ......................................................7, 13

*Easter v. Am. W. Fin.*,
    381 F.3d 948 (9th Cir. 2004) ..................................................................7

*Erwin v. Fin. Life Services, LLC*,
    2010 WL 11596536 (C.D. Cal. Aug. 30, 2010)....................................11

*Godfrey v. Kamin*,
    62 F. App'x. 693 (7th Cir. 2003) ..............................................10, 12, 13

*Jason v. Maxwell & Morgan PC*,
    2019 WL 5654469 (D. Ariz. Feb. 11, 2019)...........................................8

*Mariconda v. Farmland Partners Inc.*,
    No. 18-cv-02104-DMW-NYW, 2018 WL 6307868 (D. Colo. Dec. 3, 2018)..........................3

*In re Molycorp, Inc. Sec. Litig.*,
    2012 WL 13013602 (D. Colo. May 29, 2012).......................................10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)................................................................................7

*Port City Props. v. Union Pac. R.R. Co.*,
    518 F.3d 1186 (10th Cir. 2008) ..............................................................7

*Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*,
    700 F.2d 889 (2d Cir. 1983)..................................................................13

*Radil v. Sanborn W. Camps, Inc.*,
    384 F.3d 1220 (10th Cir. 2004) ..............................................................7

*Raines v. Byrd*,
    521 U.S. 811 (1997)..............................................................................13

ii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rector v. City and County of Denver*,
348 F.3d 935 (10th Cir. 2003) .................................................13

*Rivera v. IRS*,
708 F. App'x 508 (10th Cir. 2017) .............................................7

*Seidel v. Noah Educ. Holdings Ltd.*,
2009 WL 700782 (S.D.N.Y. Mar. 9, 2009) .........................................10

*Simantob v. Mullican Flooring, L.P.*,
No. 2:09-CV-379, 2012 WL 1493949 (D. Utah Apr. 27, 2012) ...........................8

*Singh v. City of Sacramento*,
2019 WL 1359493 (E.D. Cal. Mar. 26, 2019) ....................................8, 9

*Jeri M. Suber Credit Shelter Trust ex rel. Suber v. State Auto Prop. and Cas. Inc. Cos.*,
2009 WL 4730630 (D.S.C. Dec. 4, 2009) .........................................9

*Swinden v. Vanguard Grp., Inc.*,
No. C–09–03816 SI, 2009 WL 3415376 (N.D. Cal. Oct. 21, 2009) ........................11

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982)........................................................14

*Warth v. Seldin*,
422 U.S. 490 (1975)......................................................7, 8

**Statutes**

Cal. Prob. Code § 15620 ......................................................12

**Other Authorities**

Fed. R. Civ. P. Rule 16(b)(4) ..............................................2, 14

Fed. R. Civ. P. Rule 12(b)(1) ..............................................7, 11

Fed. R. Civ. P. Rule 12(b)(6) ................................................11

Fed. R. Civ. P. Rule 12(c) ...............................................1, 4, 5

Fed. R. Civ. P. Rule 12(h)(3) .............................................1, 2, 7

iii

## INTRODUCTION

Because the sole named plaintiff lacks Article III standing, the Court lacks subject-matter jurisdiction and "must dismiss the complaint."[1]  Fed. R. Civ. P. Rule 12(h)(3).

It is undisputed that lead plaintiff Don Brokop never personally purchased Farmland stock.[2]  Rather, the Trust of which he and his wife are co-trustees purchased stock.  Mr. Brokop sought to assert the Trust's claims in his own name.  And he admittedly did so without seeking his co-trustee's consent.  The law is clear he lacks standing either to proceed in his own name on the Trust's behalf or to act for the Trust without his co-trustee's consent.

In the Recommendation, the Magistrate Judge recognized that Mr. Brokop lacks standing but nonetheless considered the merits of his class certification motion and recommended that the Court grant it, in part, and deny it, in part.  We are addressing the Magistrate Judge's Recommendation in an Objection to be filed later today.  But we respectfully submit that the Court must address the threshold issue of Mr. Brokop's standing (and the Court's subject-matter jurisdiction) before addressing the merits of his class certification motion.  Because Mr. Brokop lacks Article III standing, the Court lacks subject-matter jurisdiction.  Because the Court lacks

---

[1] The filing of this motion triggers the Private Securities Litigation Reform Act's automatic discovery stay by operation of law.  Because Defendants do not wish to delay proceedings, they consent to lifting of the Reform Act stay for purposes of completing briefing on the outstanding class certification motion and completing the ongoing expert discovery process.

[2] In this memorandum, we refer to Farmland Partners, Inc. as "Farmland," to former lead plaintiffs Cecilia Turner and the Turner Insurance Agency, Inc. as the "Turners," to former named plaintiff Obelisk Capital Management, Inc. as "Obelisk," to the Brokop Family Living Trust as the "Trust" and to Magistrate Judge Nina Y. Wang as the "Magistrate Judge."  We refer to Defendants' Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) (ECF No. 73) as the "Rule 12(c) Motion," to Plaintiffs' Motion for Leave to File a Second Amended Class Action Complaint (ECF No. 80) as the "Motion to Amend to Add Brokop," to the Motion to Withdraw the Turner Insurance Agency, Inc. and Cecilia Turner as Lead Plaintiffs and to Substitute Don Brokop as Lead Plaintiff (ECF No. 160) as the "Motion to Substitute Brokop," and to the Recommendation of United States Magistrate Judge Wang on the Plaintiffs' Motion for Class Certification (ECF No. 199) as the "Recommendation."

ny-2189634

subject-matter jurisdiction, it must dismiss Mr. Brokop's complaint under Article III and Rule 12(h)(3).

Finally, while Mr. Brokop has never sought leave to amend, should he do so now, dismissal should nonetheless be without leave to amend.  Should Mr. Brokop seek leave to amend to name himself in his role as trustee of the Trust now—almost two years after the September 5, 2019 scheduling order deadline for amendment—he would first be required to establish good cause to modify the scheduling order under Fed. R. Civ. P. 16(b)(4).  Mr. Brokop cannot show good cause at this stage.  Plaintiff's counsel claim that they did not discover Mr. Brokop's lack of standing in the rush to find a replacement for Obelisk.  Even if this were true, it would not excuse Plaintiff's counsel's failure to raise their client's lack of standing for more than a year while the Turners' motion to amend was pending.  Defendants raised Mr. Brokop's lack of standing months ago.  Nonetheless, as the Magistrate Judge noted, "Brokop has not formally moved nor been granted leave to proceed in his capacity as co-trustee of the [Trust]."  (ECF No. 199 at 14.)  Having made the strategic decision not to seek leave to amend earlier, if Mr. Brokop seeks leave to amend now, the Court should properly deny his request.

## RELEVANT BACKGROUND

On July 11, 2018, the website *Seeking Alpha* published an internet post about Farmland by an anonymous short seller writing under the pseudonym Rota Fortunae ("RF").  (*See* ECF No. 51 Ex. 2.)  Among other things, the RF Post alleged that Farmland failed to disclose as material related-party transactions five loans to entities related to Jesse Hough and to Ryan Niebur totaling approximately $9.2 million.  The first of those five loans—a $980,000 loan to Ryan Neibur—was made on October 30, 2015; the remaining four—comprising 90% of the total value of the challenged loans—were made on or after March 16, 2017.  (*See* ECF No. 50 at 7-8.)

The Turners purchased Farmland stock on February 8 and March 8, 2017—<u>after</u> the initial Niebur loan but <u>before</u> the remaining four loans.  Thus, the Turners possessed Article III standing only to assert claims based on the alleged failure to disclose the October 30, 2015 Niebur loan in an SEC filing before March 8, 2017.

When the Turners applied to serve as lead plaintiffs to represent a putative class of purchasers between March 15, 2016 and July 11, 2018, a competing lead plaintiff applicant argued that the Turners were unfit because they lacked class standing as to disclosures related to the later loans.  (ECF No. 34.)  The Court noted that the Turners "did not purchase any shares of Farmland after any of the 2017-related" alleged misstatements and that the competing lead plaintiff applicant had "argue[d] that the Turner Family would face the spectre of a strong defense motion to dismiss."  *Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104-DMW-NYW, 2018 WL 6307868, at *6 (D. Colo. Dec. 3, 2018).  But the Court appointed the Turners (as the applicant with the largest claimed loss) to serve as lead plaintiff, concluding that it would be premature to address questions of the Turners' standing during the lead plaintiff application process.  *Id.*

On March 11, 2019, the Turners filed their Amended Complaint.  In an apparent effort to address the challenge to their class standing, the Turners added Obelisk (which had purchased Farmland stock in 2018 after all of the alleged related-party loans) as an "additional named plaintiff."  (ECF No. 44 at 72.)  Obelisk's presence as an additional named plaintiff allowed the Turners to avoid a motion to dismiss their class claims.  Then, in late-November 2019, Plaintiffs' counsel informed Farmland's counsel that, rather than participate in discovery, Obelisk intended to withdraw from the case.  On December 6, 2019, Obelisk moved to voluntarily dismiss its

claims and the Court dismissed Obelisk's claims, leaving the Turners as the only named

plaintiffs.  (ECF Nos. 70 & 71.)

As the Court knows, "Defendants brought [a] motion [for judgment on the pleadings]

following the voluntary dismissal of named plaintiff Obelisk Capital Management ("OCM").

Defendants assert[ed] that without OCM, the remaining Plaintiffs [the Turners] [did] not have

standing to raise claims based on alleged misstatements made after Plaintiffs purchased the

securities at issue."  (ECF No. 140 at 1.)

Plaintiffs then filed a motion for class certification on December 16, 2019, moving for

appointment of the Turners and Mr. Brokop as class representatives and asserting that

"Defendants' Rule 12(c) motion is moot and should be withdrawn because Lead Plaintiffs now

propose Don Brokop, who bought stock after the last alleged misstatement, as an additional class

representative."  (ECF No. 75 (emphasis added).)  In their opposition to Defendants' Rule 12(c)

Motion, Plaintiffs again argued that "Defendants' Motion is [ ] now mooted by the addition of

Mr. Brokop as a proposed class representative and named plaintiff in this Action [because] Mr.

Brokop purchased FPI stock after all of the misstatements and related party loans alleged in the

FAC."  (ECF No. 82 at 7.)

"Plaintiffs filed the [Motion to Amend] on December 27, 2019, to substitute Don Brokop

for OCM as a named plaintiff."  (ECF No. 138 at 2.)  Because Plaintiffs sought to amend "well

after the September 5, 2019, scheduling order deadline for joinder of parties and amendment of

pleadings," they were required to "'demonstrate . . . good cause for seeking modification'" of the

scheduling order.  (*Id.* (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d

1230, 1240–41 (10th Cir. 2014)).)  The parties vigorously litigated whether Plaintiffs had met

their burden to show good cause to modify the scheduling order.

4

Based on Mr. Brokop's allegations that he had personally purchased Farmland Partners' stock throughout the proposed class period and thus his presence as a named plaintiff would cure the Turner's lack of class standing, Defendants agreed that, "In the event that the Court grants Plaintiffs leave to amend to add Mr. Brokop, then, of course, [the Rule 12(c) Motion] would be moot."  (ECF No. 88 at 3.)  "For th[at] reason, Defendants [did] not object to the Court holding [the Rule 12(c) Motion] in abeyance until Plaintiffs' motion for leave to amend is decided."  (*Id.*)

The Court ultimately granted the Turners' motion to amend to add Mr. Brokop as a named plaintiff.  (ECF No. 138.)  Based on Mr. Brokop's allegations that he had personally purchased Farmland stock and thus possessed standing, the Court concluded that Mr. Brokop's addition rendered Defendants' Rule 12(c) Motion moot (and Defendants agreed):

> Subsequent to the filing of Defendants' motion, however, this Court granted Plaintiffs' Motion for Leave To File a Second Amended Class Action Complaint to add a new plaintiff, Don Brokop, <u>who purchased the securities at issue after all the alleged misstatements were made</u>.  With this amendment, Defendants' standing argument is rendered moot, as Defendants themselves admit.

(ECF No. 140.)

The Court's denial of the Rule 12(c) Motion as moot lifted the Reform Act discovery stay and the parties proceeded on an accelerated schedule of class certification discovery and briefing.  On January 4, 2021, Mr. Brokop first produced the Trust's trading records and Defendants first learned that Mr. Brokop had <u>not</u> personally purchased Farmland stock and was seeking to assert claims that belonged to the Trust.  In other words, more than a year after the Turners moved to amend to add Mr. Brokop in order to cure their own lack of class standing, Defendants learned that Mr. Brokop himself lacked Article III standing.

Because the Turners remained in the case—and, thus, the Court retained subject-matter jurisdiction notwithstanding Mr. Brokop's lack of standing—Defendants first raised

ny-2189634

Mr. Brokop's lack of standing in opposition to Mr. Brokop's appointment as class representative. (ECF No. 151 at 26.)  On June 7, 2021—after class certification had been fully briefed—the Court granted the Turners' motion to withdraw, leaving Mr. Brokop as the only named plaintiff. (ECF No. 195.)

On July 23, 2021, Magistrate Judge Wang issued the Recommendation.  (ECF No. 199.) As relevant for purposes of this motion:  First, the Magistrate Judge recognized "[i]f the named plaintiff does not have standing, then this court lacks subject matter over the action as a whole." (*Id.* at 12 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).)  Second, the Magistrate Judge recognized that Mr. Brokop asserted claims in his own name and has never sought to assert claims in his role as co-trustee on the Trust's behalf.  The Magistrate Judge explained that:

- In the operative Second Amended Complaint, "Mr. Brokop is identified as an 'additional named plaintiff [who] purchased FPI stock during the Class Period and was damaged upon the revelation of the alleged corrective disclosure . . . as set forth in his attached certification" (ECF No. 199 at 13 (citing ECF No. 139 at ¶ 28));

- "In the attached certification, Mr. Brokop is identified simply as 'Don Brokop'" (*id.*);

- "Mr. Brokop has not formally moved nor been granted leave to proceed in his capacity as co-trustee of the Brokop Living Trust" (*id.* at 14); and

- "[T]here is no dispute that there is a distinction between his capacities as an individual and as a co-trustee" (*id.*).

Nonetheless, the Magistrate Judge "decline[d] to recommend denial of the Motion to Certify on this procedural ground when it is associated with Mr. Brokop and could be corrected through a straightforward amendment."  (*Id.* (citing *Simantob v. Mullican Flooring, L.P.*, No. 2:09-CV-379, 2012 WL 1493949, at *4 (D. Utah Apr. 27, 2012)).)  Instead, the Magistrate Judge recommended that the Court correct Mr. Brokop's lack of Article III standing by amending the caption *sua sponte* "to reflect that Mr. Brokop proceeds as co-trustee of the Brokop Living Trust."  (*Id.* at 44.)

**ARGUMENT**

I.   **BECAUSE MR. BROKOP LACKS ARTICLE III STANDING TO SUE IN HIS OWN NAME, THE COURT MUST DISMISS THE COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION.**

   A.   **The Court Must Address Mr. Brokop's Standing Before Addressing His Class Certification Motion.**

Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  A motion to dismiss for lack of standing under Rule 12(b)(1) "may be raised at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (citing Fed. Rule Civ. P. Rule 12(b)(1) and 12(h)(3)).  Indeed, "when the record reveals a colorable standing issue," the Court "must address [it], <u>sua sponte</u> if necessary."  *Rivera v. IRS*, 708 F. App'x 508, 513 (10th Cir. 2017); *see also Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (a "court must be sure of its own jurisdiction before getting to the merits").

Whenever a standing question arises, "the party asserting jurisdiction"—in this case, Mr. Brokop—bears "[t]he burden of establishing subject matter jurisdiction," including Article III standing.  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).[3]  If the Court determines that Mr. Brokop has failed to carry that burden, then it "<u>must</u> dismiss the action."  Fed. R. Civ. P. Rule 12(h)(3) (emphasis added).  "'Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.'"  *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)

_____

[3] *See also Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1224 (10th Cir. 2004) ("[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter").

(quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

  **B.**  **Mr. Brokop Lacks Standing.**

    **1.**  **Because Mr. Brokop Sued in His Own Name, He Lacks Standing to Bring Claims Belonging to the Trust.**

  "A plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). For this reason, an individual trustee or beneficiary of a trust lacks Article III standing to assert claims belonging to the trust.

  Mr. Brokop did not personally purchase or hold any Farmland stock and, thus, did not personally suffer any loss from the supposed fraud. Rather, he and his wife as co-trustees purchased on behalf of the Trust, which they established under California law for their children's benefit. (*See* Ex. 1; Ex. 2 at 39:13–23; 251:23–252:3.) The Trust's brokerage account held the stock and only the Trust suffered any losses from the supposed fraud. *Id.* As a result, Mr. Brokop lacks standing to sue individually. *See Singh v. City of Sacramento*, 2019 WL 1359493, at *5 (E.D. Cal. Mar. 26, 2019) ("[T]his property is held in trust. . . . Karen Singh brings this lawsuit only in her individual capacity. Because any injury to interests in the subject properties is an injury to the Trust, not to Karen Singh personally, she lacks standing as an individual under Article III and under California law.").[4] Mr. and Mrs. Brokop elected to hold these assets in trust because they concluded that doing so would provide a benefit to them and their children. (*See* Ex. 2 at 253:1–8.) Having made the decision to hold these assets in trust, neither Mr. Brokop nor the Trust can now choose to disregard the distinction between the Trust and Mr. Brokop, as an

---

[4] *See also Simantob v. Mullican Flooring, L.P.*, 2012 WL 1493949, at *1 (D. Utah April 27, 2012); *Jason v. Maxwell & Morgan PC*, 2019 WL 5654469, *2 (D. Ariz. Feb. 11, 2019) ("Mr. Jason lacked Article III standing to sue because '[w]hile [he] did allege a concrete and actual injury in his Complaint, it was not suffered by him in an individual or personal way.'").

ny-2189634

individual.  *See Jeri M. Suber Credit Shelter Trust ex rel. Suber v. State Auto Prop. and Cas. Inc. Cos.*, 2009 WL 4730630 (D.S.C. Dec. 4, 2009) ("Suber, as trustee, elected to hold the real property in a trust. He and the Trust cannot now disregard the distinctions between the Trust and Suber, as an individual. . .").  (*See also* ECF No. 199 at 14 ("there is no dispute that there is a distinction between [Mr. Brokop's] capacities as an individual and as a co-trustee").)

Mr. Brokop does not—and cannot—contest the well-established rule that a trustee lacks standing under Article III to bring an individual claim premised on an injury to the trust. California law—which governs the Brokop Living Trust—is unequivocal that a trustee cannot sue in his or her individual capacity for injuries sustained by the trust.  *See, e.g.*, *Baldwin Park Free Speech Coal. v. City of Baldwin Park*, 2020 WL 5549138, at *6 (C.D. Cal. Sept. 15, 2020) (dismissing claim for lack of standing because "[plaintiff] has brought this action in his <u>individual capacity</u>, and not as trustee of the Trust . . . [which] was not disclosed in the first amended complaint at all.") (quotations omitted) (emphasis in original); *Singh*, 2019 WL 1359493, at *5 ("Because any injury to interests in the subject properties is an injury to the Trust, not to [the trustee] personally, she lacks standing as an individual under Article III and under California law.").

Nor can Mr. Brokop dispute that he filed the Second Amended Complaint in his individual capacity and <u>not</u> in his capacity as a co-trustee of the Trust.  When a party is suing in its capacity as a trustee, rather than individually, the allegations in the complaint and caption must make that clear.  *Baldwin*, 2020 WL 5549138, at *6 ("[E]ven if Ehlers were the 'sole' trustee and entitled to sue as trustee on that basis . . . Ehlers has brought this action in his ***individual capacity***, and not as trustee of the Trust . . . [and] the fact that the Trust, and not Ehlers, owns the Baldwin Park property was not disclosed in the first amended complaint at

all.") (emphasis in original) (quotations and citations omitted).  There is no indication anywhere in the Second Amended Complaint that Mr. Brokop was acting on the Trust's behalf in asserting his claims.  "Indeed, the fact that the Trust, and not [Mr. Brokop], [purchased Farmland stock] was not disclosed in the [Second Amended Complaint] at all."  *Baldwin*, 2020 WL 5549138, *6 ("[E]ven if Ehlers were the 'sole' trustee and entitled to sue as trustee on that basis, Ehlers has brought this action in his *individual capacity*, and not as trustee of the Trust.") (internal citation omitted) (emphasis in original).  As the Magistrate Judge explained, Mr. Brokop seeks to proceed "as an individual when it is undisputed that any FPI stocks are held within the Brokop Living Trust" and "there is no dispute that there is a distinction between his capacities as an individual and as a co-trustee."[5]  (ECF No. 199 at 14.)

> **2.      Even if Mr. Brokop Had Purported To Sue as a Trustee—and He Did Not—He Lacks Standing to Act on the Trust's Behalf Without His Co-Trustee's Consent.**

Even if he had purported to sue as trustee, Mr. Brokop lacked authority to act alone on the Trust's behalf without his wife's consent because "a co-trustee [does] not have standing to pursue a claim on behalf of the trust where the other co-trustees had not authorized the litigation." *Godfrey v. Kamin*, 62 F. App'x. 693, 695 (7th Cir. 2003) (citing *Madden v. Univ. Club of Evanston*, 422 N.E.2d 1172, 1174 (1981)).

As a matter of California law—which governs the Trust—"'a power vested in two or more trustees may only be exercised by their unanimous action.' . . . This includes the power to maintain a

---

[5] To be clear, Defendants do not dispute that a trustee might have standing to bring securities fraud claims on behalf of a trust.  *See, e.g.*, *Seidel v. Noah Educ. Holdings Ltd.*, 2009 WL 700782, at *3 (S.D.N.Y. Mar. 9, 2009) (plaintiff who "moves *in his capacity as a trustee*" has standing to be appointed lead plaintiff) (emphasis added).  Nor do Defendants dispute that a trustee who also personally bought the securities at issue might be able to sue in his individual capacity.  *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, 2012 WL 13013602, at *1 (D. Colo. May 29, 2012) (trustee sued individually and in his capacity as a trustee to assert claims based both on purchases he made personally and those he made on behalf of the trust).  But that is not what Mr. Brokop has done here.  He seeks to assert claims in his "[i]ndividual[ ]" capacity for purchases made on the Trust's behalf.

ny-2189634

legal action on behalf of the trust." *Swinden v. Vanguard Grp., Inc.*, No. C–09–03816 SI, 2009 WL 3415376 (N.D. Cal. Oct. 21, 2009) (quoting Cal. Prob. Code § 15620). As a result, an individual co-trustee "lacks standing to bring a claim on [the trust's] behalf without . . . obtaining the consent of his co-trustee." *Erwin v. Fin. Life Services, LLC*, 2010 WL 11596536 (C.D. Cal. Aug. 30, 2010). While Mr. Brokop argues that his failure to obtain the required consent is merely an issue of capacity to sue, courts considering the issue have repeatedly considered it a matter of jurisdictional standing. *See id.* (dismissing under Rule 12(b)(1) for lack of subject-matter jurisdiction).[6]

Mr. Brokop admits he did not seek his wife's consent before bringing joining this suit. He did not even tell her about the case until December 2020. Even then, he did not ask for her consent or approval.

> Q. And your—your wife is the co-trustee; correct?
>
> A. **Correct.**
>
> Q. Did you consult her before you signed the first certification in July 2018?
>
> A. **No.**
>
> Q. Did you consult her before you submitted the second certification—
>
> A **No.**
>
> Q. —in—I'm sorry. If you can just let me finish my question. Did you consult her before you submitted your second declaration in December of 2019?
>
> A. **No.**
>
> Q. When did she, if ever, become aware that you were participating in this lawsuit?
>
> (Objection)
>
> A. **I don't remember. Probably in—in—I'm guessing, it would have been in December of last year [i.e. December 2020]**

---

[6] While the defendant in *Swinden* raised the plaintiff's authority to sue on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court expressly "dismiss[ed] for lack of standing." *Swinden*, 2009 WL 3415376.

ny-2189634

> **when I talked to Joe. . .**

    Q.    Did—at that time, did you ask her whether she agreed that it made sense for you to participate in this lawsuit?

        (Objection)

    A.    **No.  No.**

(*See* Ex. 2 at 258:21–260:5.)  This unequivocal testimony confirms that Mr. Brokop failed to obtain his co-trustee's consent and, thus, lacks standing even to act in his role as a co-trustee.

Mr. Brokop had earlier testified that Mrs. Brokop "completely and implicitly entrusts in what [he] do[es] with [their] financial—personal financial management."  (*Id.* at 21:21-22:7.)  But, when asked directly whether he sought or obtained his wife's consent before joining this action, Mr. Brokop said nothing about "implicit trust."  He simply answered, "No."  (*Id.* at 260:3–5.)  He now argues that testimony about his wife's implicit trust in him substitutes for evidence that he obtained the legally required consent.  But Mr. Brokop's testimony about his wife's implicit trust does not suggest that she consciously delegated to him the power to act unilaterally to assert claims on the Trust's behalf.  Even if Mr. Brokop's testimony could be fairly read as evidence that Mrs. Brokop "implicitly" delegated authority to him, California law requires unanimous consent of all co-trustees "[u]nless otherwise provided in the trust instrument."  Cal. Prob. Code § 15620.  Thus, an "implicit" delegation of power does not suffice.  And nothing in the Trust Agreement permits Mr. Brokop to act unilaterally on the Trust's behalf without his co-trustee's consent.  (Ex. 1.)  The Seventh Circuit in *Godfrey* considered—and rejected—a similar argument by a co-trustee seeking to act without his co-trustee's consent based on the non-consenting co-trustee's "acquiescence":

> In response, Godfrey claims that because, following Comerica's appointment as co-trustee, Comerica acknowledged its knowledge of this suit and did not object to it, it has ratified the suit. However, Comerica's failure to object to this litigation is insufficient under the terms of the Trust to allow Godfrey to represent the Trust unilaterally. . . . Because Comerica did not sign a revocable instrument delegating authority to Godfrey to sue

on behalf of the Trust, "its acquiescence," as Godfrey puts it, is insufficient
to grant Godfrey standing.

*Godfrey*, 62 Fed. Appx. at 696.  Likewise, even if there were evidence of Mrs. Brokop's

"implicit" consent, it would be "insufficient to grant [Mr. Brokop] standing."[7]

### C.   The Court Cannot Amend the Caption to Cure Mr. Brokop's Lack of Standing.

The Magistrate Judge recognized that "Mr. Brokop has not formally moved nor been

granted leave to proceed in his capacity as co-trustee of the Brokop Living Trust and there is no

dispute that there is a distinction between his capacities as an individual and as a co-trustee."

(ECF No. 199 at 14.)  But the Magistrate erroneously "declin[ed] to recommend denial of the

Motion to Certify on [the] procedural ground" that Mr. Brokop lacked standing, instead

recommending that the case caption be amended "to reflect that Mr. Brokop proceeds as co-

trustee of the Brokop Living Trust."  (ECF No. 199 at 14.)

Far from mere "procedural" technicalities, "standing considerations are 'an indispensable

part of the plaintiff's case.'"  *Rector v. City and County of Denver*, 348 F.3d 935, 943 (10th Cir.

2003) (quoting *Lujan*, 504 U.S. at 561).  For this reason, the Court cannot abandon the

requirements of Article III standing "for the sake of convenience and efficiency."  *Raines v.

Byrd*, 521 U.S. 811, 820 (1997).  If Mr. Brokop lacks standing to sue individually—and he

does—then the Court lacks subject-matter jurisdiction over this action.  Because "'[a] court may

not . . . exercise authority over a case for which it does not have subject matter jurisdiction'",

*Cunningham*, 427 F.3d at 1245, "if jurisdiction is lacking," it "cannot be aided by the

---

[7] The Magistrate concluded that Defendants "fail[ed] to [present] some indication from Mrs. Brokop that she does not consent to the Trust's pursuit of this action."  (ECF No. 199 at 16.)  As the court held in *Godfrey*, however, Mrs. Brokop's "acquiescence" does not suffice.  Tellingly, in the months since Defendants questioned Mr. Brokop about his failure to seek Mrs. Brokop's consent, he has conspicuously failed to offer any affirmative evidence of her consent.

ny-2189634

intervention of a [plaintiff] with a sufficient claim." *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983). Once a court has "determined that it lacks jurisdiction over the action," it "is incapable" of taking any action other than dismissing the complaint. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006). Should the Court conclude that it lacks subject-matter jurisdiction here, then the only course is to dismiss the Complaint.

## II.   THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT LEAVE TO AMEND.

Despite the fact that Farmland raised Mr. Brokop's lack of individual standing months ago, he has never sought to amend or otherwise to cure his lack of standing. (He has not even made the modest effort that would be required to produce evidence of his wife's consent, if she, in fact, consented, as he now claims.) If he seeks to do amend now—years after the scheduling order deadline—then his request must meet the requirements of Rule 16(b)(4). Among other requirements, he must establish good cause for his failure to act diligently to meet the deadline or to seek amendment as soon as possible after the deadline. Article III standing "is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982). To justify leave to amend at this stage, Mr. Brokop must show that he acted diligently when the need for amendment became clear. The Court should not reward Mr. Brokop's failure to promptly address his lack of standing.

## CONCLUSION

Because Mr. Brokop—the only named plaintiff in this action—lacks Article III standing and cannot show good cause to modify the scheduling order to permit amendment, the Court should dismiss the Complaint without leave to amend.

ny-2189634

Dated:  August 6, 2021

Respectfully submitted,

MORRISON & FOERSTER LLP

/s/ James J. Beha II
James J. Beha II
Jocelyn E. Greer
250 West 55th Street
New York, NY 10019-9601
Telephone:  212.468.8000
Facsimile:  212.468.7900
Email: JBeha@mofo.com
       JGreer@mofo.com

Nicole K. Serfoss
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
Email: NSerfoss@mofo.com
*Attorneys for Defendants*

ny-2189634

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August, 2021 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following email addresses:

jeff@jberenslaw.com
lhasson@bernlieb.com
rusty@shumanlawfirm.com
jake@blockesq.com
seidman@bernlieb.com

/s/ James J. Beha II

16