# Exhibit 17

THOMSON REUTERS
Westlaw®

# The growing menace of 'short and distort' campaigns

**By Perrie M. Weiner, Esq., Robert D. Weber, Esq., and Kirby Hsu, Esq., *DLA Piper***

**AUGUST 31, 2017**

One of the worst nightmares a small-cap company can face is a sneak attack by an anonymous, short-selling "analyst" who has just flooded the newswire with a false negative report alleging that the company is in trouble, or, even worse, fraudulent.

Because many small caps lack robust in-house investor relations teams and have limited analyst coverage, it is nearly impossible to shoot down scurrilous slanders with the lightning speed at which today's stock markets react.

As a result, many investors will immediately sell their long positions based on the falsehoods asserted in the short attack, resulting in a rapid crash of the company's market capitalization, a hit to the company's reputation, and tens to hundreds of millions of dollars in harm — all overnight — to buy-and-hold investors.

While companies can correct false information that an "analyst" has nefariously injected into the market through the publication of thorough rebuttals, investor conference calls and media outreach, those steps can take days or even weeks to complete.

By contrast, the short-selling analyst who made the negative attack (and any cohorts) covered their position and pocketed their profits in a matter of minutes or hours.

Although the majority of short sellers are completely legitimate, a small number of crooked outfits intentionally publish demonstrably false and misleading information about a company, and engineer a coordinated campaign to rapidly disseminate that false information to the market, for the express purpose of cratering the market price of a stock that they previously sold short in order to reap a tremendous profit.

This tactic is known as the "short and distort" scheme. While the scheme constitutes illegal market manipulation just like other more well-known schemes such as the "pump and dump," to date its practitioners have mostly evaded sanction and prosecution.

For the protection of millions of investors, the Securities and Exchange Commission and private litigants need to take steps now to curtail this practice before it gets worse.

## SHORT SELLING: THE BASICS

Short selling in general is a perfectly legitimate investment strategy; in fact, it is an essential component of a healthy and efficient financial market.

Whereas a trader taking a long position looks for high-performing but undervalued companies to invest in, a trader taking a short position seeks the opposite. The targets are those with share prices that exceed the companies' fair values.

Short sellers can make a profit and also help the market more accurately price the stock of an overvalued company.

Short selling in general is a perfectly legitimate investment strategy; in fact, it is an essential component of a healthy and efficient financial market.

While certain firms that pursue short strategies do not publicly disclose their positions or explain the reasoning behind their strategies, others announce to the market the reasons behind their decision to short a company's stock — and may even aggressively promote their views through a series of public presentations.

As long as the information that a short-side analyst injects into the market is accurate, not misleading, and based on diligent research, the publication of such information is legal and may even serve a legitimate function in a free marketplace.

## 'SHORT AND DISTORT'

Many people are familiar with the proverbial pump-and-dump scheme, which has been depicted in movies including "The Wolf of Wall Street" and "Boiler Room."

Pump-and-dump is a market manipulation scheme whereby a manipulator establishes a long position in a company's stock, engages in a promotional campaign using misleading or false information to lure unsuspecting investors to buy the stock and artificially drive up its price, and then dumps his shares at a handsome profit.

Thomson Reuters is a commercial publisher of content that is general and educational in nature, may not reflect all recent legal developments and may not apply to the specific facts and circumstances of individual transactions and cases. Users should consult with qualified legal counsel before acting on any information published by Thomson Reuters online or in print. Thomson Reuters, its affiliates and their editorial staff are not a law firm, do not represent or advise clients in any matter and are not bound by the professional responsibilities and duties of a legal practitioner. Nothing in this publication should be construed as legal advice or creating an attorney-client relationship. The views expressed in this publication by any contributor are not necessarily those of the publisher.

the answer company™
THOMSON REUTERS®

Short-and-distort is the mirror image of pump-and-dump: The manipulator shorts the stock and then spreads misleading or false negative information to drive the price down, leading to a profit when the investor closes the short position.

Manipulators who employ either scheme should face SEC enforcement action because of the harm caused by their fraud and manipulation.

Pump-and-dump hurts investors after the stock prices drop from their overinflated values. Short-and-distort hurts both investors and the targeted companies, which can lose millions in share value due to the baseless reports.

A manipulator can perpetrate a short-and-distort scheme in two ways.

The first is to target investment message boards and find articles and posts containing real information about a company's strong performance. The manipulative trader then clutters those threads to make optimistic information more difficult to find.

The second way is much more direct and powerful: The manipulator drafts a professional-looking negative report about a company and attempts to widely circulate the report simultaneously across numerous media channels that will be seen by investors, such as popular investor websites, newswires, Twitter and email lists.

The manipulator's report typically will use attention-grabbing headlines claiming that the target company is a fraud and that its stock will decline almost to zero. Often, the body of the report will buttress that assertion with false or misleading factual claims.

Just like a pump-and-dump, a short-and-distort scheme violates the Securities Exchange Act anti-fraud provisions, as well as SEC Rule 10b-5. The elements of a 10b-5 claim are:

- Misrepresentation.
- Materiality.
- Intent to deceive.
- Connection to the purchase or sale of securities.

These elements are present in all short-and-distort schemes. Surprisingly, however, successful legal actions against short-and-distort fraudsters have been few and far between, in distinct contrast with government actions targeting pump-and-dump schemes.

The SEC has an extensive history of prosecuting practitioners of pump-and-dump schemes, including enforcement by the agency's Microcap Fraud Task Force.

The SEC's fiscal year 2016 enforcement results include a number of actions against pump-and-dump market manipulation schemes. These include Operation Shell-Expel, which suspended trading in 199 microcap companies, and an action that charged manipulators behind a $78 million pump-and-dump scheme involving a coffee company.[1]

The SEC similarly should be leading the charge against purveyors of short-and-distort schemes. Unfortunately, the commission inexplicably has been reluctant to do so.

> Just like a pump-and-dump, a short-and-distort scheme violates the Securities Exchange Act anti-fraud provisions, as well as SEC Rule 10b-5.

In fact, it has brought hardly any enforcement actions targeting this conduct. This has left the burden of challenging short-and-distort artists to injured companies and investors, through costly civil litigation.

## OBSTACLES TO CIVIL ACTION

Companies hurt by short-and-distort schemes have tried to recover their losses by suing manipulators and the platforms they use to spread the false information, asserting defamation and other tort claims.

A number of obstacles, however, have stood in the way of these civil actions, leaving companies and investors that may have lost millions of dollars due to a manipulative trader's false report with no recourse.

First among these obstacles is the fact that it may be hard to discover the manipulator's true identity or to serve them with process. A number of short-and-distort practitioners publish their reports under pseudonyms.

Further, some anonymous bloggers whose true identities subsequently become known take steps to disguise their locations to avoid process.

This was the case in a recent matter involving Cemtrex, which filed a $170 million lawsuit against Ricardo Pearson. Pearson used the pseudonym "Richard Pearson" for an alleged short-and-distort scheme.

After filing suit in the U.S. District Court for the Eastern District of New York, Cemtrex had to dismiss the complaint voluntarily because it was unable to locate Pearson for service of process.

Second, it may not be cost-efficient for an injured company or investor to sue the author of a short-and-distort article.

Our experience has revealed that a number of authors of short-attack articles have limited assets themselves. Often,

 © 2017 Thomson Reuters

they may be simply a "front" for deeper-pocketed funds that encouraged the author to publish a negative report and tip off the fund shortly in advance of publication, in exchange for a modest payment.

Identifying the real parties ultimately behind a short attack can be incredibly difficult and time-consuming, and since the funders did not actually publish the report it would be even more difficult to hold them legally liable.

Third, courts may view a manipulator's report as protected speech. The legal claim that a company must plead and prove in these types of situations is a claim for defamation — that the author knowingly published materially false and misleading information about the company that caused damage. These claims are difficult to prove.

> Companies hurt by short-and-distort schemes have tried to recover their losses by suing manipulators and the platforms they use to spread the false information, asserting defamation and other tort claims.

Fourth, courts historically have found that message boards and investor websites where false negative reports often are published are shielded from liability pursuant to the federal Communications Decency Act.

That statute provides that an "information content provider shall not be treated as the publisher or speaker of any information provided by another information content provider."[2]

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."[3]

Popular investor news platforms such as Seeking Alpha have been found to be an "information content provider" shielded from liability.

## FIGHTING BACK

Despite these challenges, wrongfully targeted companies can and are fighting back, and there have been some successes.

One noteworthy example involves homebuilder Lennar Corp., which allegedly was the subject of a short-and-distort campaign conducted by developer Nicholas Marsch and his associate Barry Minkow.

Marsch had partnered with Lennar to develop a golf community outside San Diego, but at some point the relationship soured.

According to court documents, Minkow allegedly was hired to put economic pressure on Lennar to pay money claimed by Marsch. To do so, Minkow used the internet, press releases, email communications and YouTube videos to promote the message that Lennar was a "financial crime in progress,"[4] with the intent of artificially depressing Lennar's stock price.

Minkow allegedly short-sold Lennar stock ahead of certain false disclosures. Lennar's market cap declined by nearly half a billion dollars.

But Lennar pushed back. The scheme was eventually discovered, Minkow pleaded guilty to a criminal charge of conspiracy to commit securities fraud (and was sentenced to five years in prison),[5] and Lennar won a $1 billion judgment against Marsch in a civil defamation case.[6]

While Lennar likely never will collect most of that judgment, the result may deter others from publishing false reports.

More recently, an anonymous short seller launched a short attack last year against public company Chromadex Inc., causing a $100 million market cap loss in one day.

One of the individuals named in the negative report hired lawyers (including the authors of this article), who took immediate action.

The true identity of the anonymous blogger was discovered. He was convinced to fully retract his report, and he posted an apology. Chromadex's market price mostly, but not fully, recovered shortly thereafter.

Successes like these need to happen more often if the market is to be rid of the scourge of short-and-distort schemes.

The SEC and other government authorities should be encouraged to be more responsive and willing to pursue enforcement when presented with evidence that the market is being manipulated by short sellers who knowingly publish false negative information.

Companies and private investors also may need to be more willing to pursue civil actions against the purveyors of "short and distorts" to discourage the continued propagation of these schemes.

Until "short and distorters" are prosecuted as rigorously as "pump and dumpers," their damaging activities are likely to continue.

© 2017 Thomson Reuters

## NOTES

[1] Press Release, Sec. & Exch. Comm'n, SEC Announces Enforcement Results for FY 2016 (Oct. 11, 2016), https://www.sec.gov/news/pressrelease/2016-212.html.

[2] 47 U.S.C. § 230.

[3] *Id.* at § 230(f)(3).

[4] Beth Barret, *Barry Minkow 2.0,* LA Weekly (Oct. 14, 2010), http://www.laweekly.com/news/barry-minkow-20-2167321.

[5] *See* Press Release, Dep't of Justice, Barry Minkow Sentenced to Five Years' Imprisonment on Stock Manipulation Conspiracy (July 21, 2011), https://www.justice.gov/archive/usao/fls/PressReleases/2011/110721-02.html.

[6] Jeff Collins, *Lennar Awarded $1 Billion in Defamation Case,* Orange County Reg. (Dec. 4, 2013), http://www.ocregister.com/2013/12/04/lennar-awarded-1-billion-in-defamation-case/.

*This article first appeared in the August 31, 2017, edition of* Westlaw Journal Securities Litigation & Regulation.

## ABOUT THE AUTHORS





**Perrie M. Weiner** (L) is a co-managing partner at the Los Angeles office of **DLA Piper**. **Robert D. Weber** (C) is also a partner at the firm's Los Angeles office, and **Kirby Hsu** (R) is an associate. All three are part the firm's securities litigation practice and are among the select few lawyers who have successfully halted an alleged short-and-distort campaign.

**Thomson Reuters** develops and delivers intelligent information and solutions for professionals, connecting and empowering global markets. We enable professionals to make the decisions that matter ost, all powered by the world's most trusted news organization.

©2017 Thomson Reuters. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For subscription information, please visit www.West.Thomson.com.